T.C. Memo. 1996-27


UNITED STATES TAX COURT


WILBURN C. HALL, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26125-90.            Filed January 25, 1996.


Petitioner (P) was involved in a number of businesses, most of which were incorporated. P reported on his tax returns large business losses for the years in issue, most of which appear to arise from expenses of his corporations. P had gross receipts, interest, and royalty income in excess of what he reported on his tax returns.

P filed his tax returns for 1982 through 1986 late. Respondent mailed a notice of deficiency to P less than 3 years after any of these tax returns were filed. This notice of deficiency was returned by the U.S. Postal Service. P wrote to respondent, stating that any notice of deficiency should be sent to him at two addresses--(1) the one respondent had already used and (2) another address. Respondent then mailed a photocopy of the notice of deficiency to P at the other address. By this time, it was more than 3 years after P had filed his tax returns for 1982, 1983, and 1984. P filed his petition with this Court within 90 days after the first mailing of the notice of deficiency.

1. Held: The first mailing of the notice of deficiency was to P's last known address, and was timely. Secs. 6212(b)(1), 6501(a), I.R.C. 1986.

2. *Held*, _further_, P had unreported Schedule C gross receipts for 1982; amount determined.

3. *Held*, _further_, P had unreported interest income for 1984-1986; amounts determined.

4. *Held*, _further_, P had unreported royalty income for 1983, 1984, and 1986; P did not have unreported royalty income for 1985.

5. *Held*, _further_, expenses of corporations claimed on P's 1982-1986 tax returns are expenses of separate corporate entities, and are not deductible by P.

6. *Held*, _further_, amounts of deductions P is entitled to for 1982-1986 determined.

7. *Held*, _further_, P is liable for self-employment taxes for 1983, 1985, and 1986.

8. *Held*, _further_, P is liable for additions to tax under secs. 6651(a)(1), 6653(a), and 6661(a), I.R.C. 1954 and 1986.

Wilburn C. Hall, Jr., pro se.

Edith F. Moates, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHABOT, _Judge_: Respondent determined deficiencies in Federal individual income tax and additions to tax under sections 6651 (a)(1)[1] (failure to timely file tax returns), 6653(a) (negligence, etc.), and 6661(a) (substantial underpayment) against petitioner as follows:

---

[1]Unless indicated otherwise all chapter and section references are to chapters and sections of the Internal Revenue Code of 1954, or the Internal Revenue Code of 1986, as in effect for the respective years in issue; references to secs.6501 and 6212 are to these sections as in effect for notices of deficiency mailed during 1990.

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency[1] | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661(a) |
| 1982 | $213,658 | $53,415 | $10,683 | [2] | $53,415 |
| 1983 | 38,594 | 9,648 | 1,930 | [3] | 9,135 |
| 1984 | 27,901 | 6,975 | 1,395 | [2] | 6,975 |
| 1985 | 24,166 | 6,042 | 1,208 | [2] | 6,042 |

| | | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | |
|---|---|---|---|---|
| 1986 | 4,333 | 1,083 | $217 | [2] | -- |

[1]Of these amounts, $102 for 1983, $1,587 for 1985, and $438 for 1986 are self-employment taxes under ch. 2; the remainders are income taxes under ch. 1.

[2]50 percent of the interest due on the entire deficiency for each year.

[3]50 percent of the interest due on $36,540.

After concessions by both sides,[2] the issues for decision are as follows:

(1)  Whether a notice of deficiency for 1982 through 1984 was mailed to petitioner at his last known address within the time limitation prescribed under section 6501.

(2)  Whether petitioner had unreported Schedule C gross receipts for 1982, and, if so, in what amount.

(3)  Whether petitioner had unreported interest income for 1984 through 1986, and, if so, in what amounts.

---

[2]Respondent conceded the additions to tax for 1982 and the $10,329 royalty income adjustment for 1982.  Respondent also conceded $158,355 of the Schedule C gross receipts adjustment to income for 1982. Petitioner conceded that he is entitled to claim an exemption for only one child for 1983.  Deemed concessions are discussed infra, in connection with the issues to which the specific concessions relate.

(4)   Whether petitioner had unreported royalty income for 1983 through 1986, and, if so, in what amounts.

5)   Whether expenses claimed on petitioner's 1982 through 1986 tax returns are expenses of petitioner, or of separate corporate entities, and, if the latter, then whether petitioner is entitled to deduct any of these expenses.

(6)   Whether petitioner is entitled to claimed Schedule C deductions for 1982 through 1986, and, if so, in what amounts.

(7)   Whether petitioner is liable for self-employment taxes under section 1401 for 1983, 1985, and 1986, and, if so, in what amounts.

(8)   Whether petitioner is liable for additions to tax under section 6651(a)(1) for 1983 through 1986.

(9)   Whether petitioner is liable for additions to tax under section 6653(a)(1) for 1983 through 1985, and under section 6653(a)(1)(A) for 1986; and whether petitioner is liable for additions to tax under section 6653(a)(2) for 1983 through 1985, and under section 6653(a)(1)(B) for 1986.

(10)   Whether petitioner is liable for additions to tax under section 6661(a) for 1983 through 1985.

## FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this

reference.

When the petition was filed in the instant case, petitioner resided in Norman, Oklahoma.

### Background

Petitioner received a B.S. in engineering degree in 1964, an M.B.A. degree in 1969, and a J.D. degree in 1974, all from the University of Oklahoma. Petitioner has been a practicing attorney since 1974. He is admitted to the bar of Oklahoma, and is also admitted to practice before the U.S. Court of Appeals for the Tenth Circuit and the U.S. Tax Court.

Petitioner married Pamela Hall (hereinafter sometimes referred to as Pamela) on March 13, 1965. Petitioner and Pamela remained married until their divorce on August 25, 1982. Petitioner had two children of this marriage, born in 1966 and 1969. Petitioner had a third child, born in 1985. Petitioner paid child support on behalf of all his children.

Beginning about 1981, petitioner suffered financial setbacks. On February 11, 1987, petitioner filed for bankruptcy in the U.S. Bankruptcy Court for the Western District of Oklahoma, and was released from all dischargeable debts on June 18, 1987. During the years in issue, petitioner resided in small living spaces and paid relatively little rent.

For the period 1982 through 1986, petitioner was a cash basis taxpayer.

## Business Activities

During the years in issue, petitioner was involved in a number of business activities, as follows: (1) Petitioner's law practice, (2) Hall Farms, (3) Concordia Property, Inc. (hereinafter sometimes referred to as Concordia), (4) Six Drilling Co. (hereinafter sometimes referred to as Six Drilling), (5) Stroud America Land Co., Inc. (hereinafter sometimes referred to as Stroud Land), (6) Stroud America Builders, Inc. (hereinafter sometimes referred to as Stroud Builders), (7) Preferred Security Systems, Inc. (hereinafter sometimes referred to as Preferred), (8) Brazos Drilling Co. (hereinafter sometimes referred to as Brazos), (9) Empire Drilling Co. (hereinafter sometimes referred to as Empire), (10) Paramount Valley Angus Farms, Inc. (hereinafter sometimes referred to as Paramount Farms), (11) Service Rig Co. (hereinafter sometimes referred to as Service Rig), (12) Paramount Oil Co. (hereinafter sometimes referred to as Paramount Oil), and (13) Petron Energy, Inc. (hereinafter sometimes referred to as Petron).[3] All of these

---

[3]Respondent proposes a finding of fact that petitioner was involved in activities with PVAF, Inc., during the period 1982-1986. Petitioner testified that his tax returns for this period may have shown, as expenses, interest of PVAF, Inc., or the cost of items that had been bought through the use of PVAF, Inc. However, the parties have stipulated that PVAF, Inc., was incorporated on August 18, 1988, and this incorporation date is corroborated by a stipulated report from the Oklahoma Secretary of State's office. We follow the stipulation and stipulated exhibit rather than petitioner's testimony and the unobjected-to proposed finding of fact, and do not include PVAF, Inc., among the 1982 through 1986 corporations.

business activities except for petitioner's law practice and Hall Farms were carried on in the form of Oklahoma corporations.

Concordia, Six Drilling, Stroud Land, Stroud Builders, Preferred, Brazos, Empire, Paramount Farms, Service Rig, Paramount Oil, and Petron are hereinafter sometimes referred to collectively as the Corporations.

Concordia was involved in rental properties, and had a corporate bank account. Six Drilling was involved in drilling. Both Stroud Land and Stroud Builders were involved with the Oak Brook Estates addition to Stroud, Oklahoma, a housing development; each took out loans to finance this development, and each had a bank account. Preferred was an alarm system company operating out of Norman, Oklahoma. Brazos operated one drilling rig, and also took out a $50,000 loan. Empire drilled for oil, owned five drilling rigs, owned a shop building that Empire took out a loan to finance, and also took out at least one other loan. The record does not indicate what type of business Paramount Farms was involved in, but it was in existence throughout the 5-year period in issue, although its status was suspended for about 15-1/2 months in 1984-1985. See infra table 1. Service Rig was involved in salvaging drilling rigs. Paramount Oil had a corporate bank account; it had some expenses that were deducted on one or more of petitioner's tax returns. Petron was formed to engage in oil and gas and real estate businesses; it paid taxes.

Each of the Corporations had its corporate charter suspended

for nonpayment of Oklahoma franchise taxes at some point during the years in issue. Two of the Corporations also had their charters reinstated during the years in issue. At the time of the trial none of the Corporations was dissolved, merged, or consolidated, and none of the Corporations had filed an "intent to dissolve". Petitioner's bankruptcy discharge order was issued on a "Joint Debtors" form, and shows the debtor as "Wilburn C. Hall, Jr. aka W.C. Hall, Jr., Bill Hall, Jr. dba Empire Drilling Company".

All of the Corporations were formed for business purposes. However, the corporate formalities of electing directors, etc., were not followed. Four of the Corporations (Stroud Land, Stroud Builders, Preferred, and Petron) may have filed tax returns during the years in issue. None of the Corporations, other than these four, filed tax returns.

Petitioner was an incorporator and the service agent of Concordia, Six Drilling, Brazos, Empire, and Petron. Petitioner was the service agent for Stroud Land, Stroud Builders, Paramount Farms, Service Rig, and Paramount Oil.

Table 1 lists each of the Corporations and shows when it was incorporated (I), when it was suspended for failure to meet franchise tax requirements (S), and when it was reinstated on meeting franchise tax requirements (R).

Table 1

|  | Corporation | Pre-1982 | 1982 | 1983 | 1984 | 1985 | 1986 | Post-1986 |
|---|---|---|---|---|---|---|---|---|
| Concordia | | I 04/22/74 | -- | -- | S 02/13 | -- | -- | -- | |
| Six Drilling | | I 12/06/77 | -- | -- | S 02/13 | -- | -- | -- | |
| Stroud Land | | I 02/13/78 | -- | -- | S 02/13 | -- | -- | -- | |
| Stroud Builders | | I 02/13/78 | -- | -- | [1]S 02/14 | -- | -- | -- | |
| Preferred | | I 06/08/78 | -- | -- | S 02/13 | -- | -- | -- | |
| Brazos | | I 12/14/78 | -- | -- | S 02/13 | -- | -- | -- | |
| Empire | | I 04/28/80 | -- | -- | -- | S 02/19 | -- | -- | |
| Paramount Farms | | I 12/01/81 | -- | -- | [2]S 02/13 | R 05/30 | -- | S / R / S | 02/10/87 / 09/21/88 / 02/23/90 |
| Service Rig | | -- | I 01/27 | -- | -- | S 02/13 | -- | -- | |
| Paramount Oil | | -- | I 10/15 | -- | -- | -- | S 02/10 | -- | |
| Petron | | -- | -- | -- | I 11/08 | -- | S 02/10 / R 03/11 | S / R | 02/20/87 / 12/11/89 |

[1] The parties stipulated that Stroud Builders' status was suspended by the Oklahoma Secretary of State's office on Feb. 13, 1984, but the stipulated report from that official states that the suspension was on Feb. 14, 1984.

[2] The parties stipulated that Paramount Farms' status was suspended by the Oklahoma secretary of State's office on Feb. 12, 1984, but the stipulated report from that official states that the suspension was on Feb. 13, 1984.

During the years in issue, petitioner's law practice mainly involved clients and matters related to his business activities, petitioner's father's business activities, and the activities of associates he dealt with.

Statute of Limitations

Petitioner filed each of his tax returns for 1982 through 1986 late, as shown in table 2.

Table 2

| Year | Date Filed |
|---|---|
| 1982 | Sept. 18,1987 |
| 1983 | Oct.  19,1987 |
| 1984 | Nov.   3,1987 |

                1985                         Nov.  30,1987
                1986                         Jan.  19,1988


     On each of these tax returns, petitioner showed his address as "1602 Classen, NORMAN, OK 73069", hereinafter sometimes referred to as the tax return Classen address.

     The June 18, 1987, discharge order in petitioner's 1987 bankruptcy proceeding, was issued before petitioner filed any of his tax returns for the years in issue. In this discharge order, petitioner's address is shown as Post Office Drawer B, Norman, Oklahoma 73070, hereinafter sometimes referred to as the P.O. drawer address. One of the creditors listed in the discharge order is "Internal Revenue Service, Austin, Texas 73301".

     Revenue agent John Robert Burns (hereinafter sometimes, referred to as Burns) first interviewed petitioner on June 13, 1989, more than 1 year after petitioner filed the tax returns. Before this first interview, respondent had sent a letter to petitioner. By this time, the address respondent was using for petitioner was "1602 CLASSEN, NORMAN OK 73071-4616", hereinafter sometimes referred to as the I.R.S. Classen address.

     Petitioner came to a second meeting in Burns' office on October 31, 1989. On January 25 and May 9, 1990, Burns sent to petitioner letters enclosing Forms 872, to extend the period for limitations; the May 9 letter was sent by certified mail. Petitioner did not respond to these letters. In May or June 1990 petitioner's case was reassigned from Burns to another revenue

agent, Pat Merideth, hereinafter sometimes referred to as Merideth. On June 21 and July 3, 1990, Karen Spencer (hereinafter sometimes referred to as Spencer), a supervisor, telephoned petitioner's office but did not speak with him. On July 9, 1990, Merideth telephoned petitioner and discussed with him a possible extension of the limitations period. On July 30, 1990, Spencer telephoned petitioner and verified that the I.R.S. Classen address was petitioner's mailing address.

A 30-day letter was prepared, dated August 23, 1990, using the I.R.S. Classen address. Spencer approved the 30-day letter on August 24, 1990. It is not clear from the record whether the 30-day letter was sent to petitioner.

On September 14, 1990, the notice of deficiency for 1982 through 1986 was sent by certified mail to petitioner at the I.R.S. Classen address. The U.S. Postal Service noted on the notice of deficiency envelope the following: "2nd Notice 9-20", "Return 9-30", "RETURNED TO WRITER * * * Unclaimed X". The notice of deficiency was returned to, and was received by, respondent on October 5, 1990.

On October 23, 1990, petitioner sent a letter to respondent stating as follows: (1) He was advised, on or about August 24, 1990, that respondent intended to assess additional taxes against him for 1982 through 1986; (2) he formally demanded that all "assessment notices" be mailed to him by ordinary and by certified mail to two addresses--the P.O. drawer address and the

tax return Classen address; (3) he had not received any notices regarding the assessment of additional taxes; (4) he had advised respondent previously that his mailing address should be the P.O. drawer address; and (5) respondent was aware that "There had been some difficulty in receiving certified mail at" the tax return Classen address.

Petitioner's October 23, 1990, letter was received by respondent on October 25, 1990. An "en mod" search[4] was made on November 2, 1990, at 10:09 a.m. The first page of the report on the en mod search shows the I.R.S. Classen address; the second page does not show any address; the third page shows the P.O. drawer address and another address, as follows: 124 E. MAIN NORMAN OK 73069 (hereinafter sometimes referred to as the E. Main address). Petitioner maintained a law office at the E. Main address from about 1982 through about 1984. (In or about 1984, petitioner moved his law practice to Tulsa from the E. Main address, in Norman. After about a year, he moved his law practice back to Norman.)

On or about November 7, 1990, petitioner's October 23, 1990, letter was referred to Janine MacKenzie, hereinafter sometimes referred to as MacKenzie. An "amdissa", dated November 2, 1990, 10:41 a.m., was attached to petitioner's October 23, 1990, letter, and indicates that a notice of deficiency had been sent

---

[4]An "en mod" search is an I.R.S. search through I.R.S. records for a taxpayer's most recently known address.

to petitioner for 1982 through 1986. (The record does not include an explanation of the function or nature of an "amdissa".) MacKenzie examined the report on the en mod search, and was satisfied with the information shown thereon. MacKenzie then examined the case file for petitioner and found that the original notice of deficiency had been returned by the U.S. Postal Service and was in the case file. MacKenzie checked, and did not find in respondent's case file or on respondent's computer any written notification of a change of address for petitioner before petitioner's October 23, 1990, letter. MacKenzie thereupon, on November 9, 1990, sent to petitioner at the P.O. drawer address the following letter, to which was attached a photocopy of respondent's retained copy of the notice of deficiency:

Mr. Hall,

The Notice of Deficiency sent to you at the most current address available to us at the date of mailing, has been returned by the post office as undeliverable. Subsequently, we received notification from you stating the mailing address should be P.O. Drawer B, Norman, Oklahoma 73070. The original date of mailing is the date which appears on the attached letter. If you wish to petition the Tax Court concerning the Notice of Deficiency, you have 90 days from the date on the attached Notice of Deficiency. This letter will not suspend or extend the 90 day period for filing a petition.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,


Enclosure:                      Janine MacKenzie
Original Notice of Deficiency   Quality Review Staff

On November 15, 1990, petitioner sent his petition to this Court by certified mail. The petition was received and filed on November 20, 1990. The 90th day after September 14, 1990, was December 13, 1990, which was not a Saturday, or a Sunday, or a holiday in the District of Columbia. The petition states, in pertinent part, as follows:

The Petitioner hereby petitions for a redetermination of the deficiency set forth by the Commissioner of Internal Revenue in the Notice of Deficiency of "unknown date", and as the basis for his case allege as follows:

1. The Petitioner is an individual with legal residence now at 1602 Classen, Norman, Oklahoma 73069, and mailing address of P.O. Drawer B, Norman, Oklahoma 73070. * * *

2. Petitioner believes that one or more Notices of Deficiency may have been mailed to the Petitioner on or about September 23, 1990, and may have been issued by the Office of the Internal Revenue Service at Oklahoma City, Oklahoma; Petitioner has made written demand for a copy of said Notice of Deficiency, but to date of filing Petitioner has not received said copies.

3. The deficiencies as determined by the Commissioner are believed to be for income taxes for the calendar years 1982, 1983, 1984, 1985, and 1986 in the amounts presently unknown to Petitioner, of which all taxes, penalties and interest are in dispute.

<u>Tax Returns and Records</u>

Petitioner did not report income from any of the Corporations on his tax returns for the years in issue. Petitioner did, however, report expenses of all, or almost all, of the Corporations as deductions on his tax returns. Petitioner filled out his 1982 through 1986 tax returns, during the last few months of 1987 and January of 1988 (<u>supra</u> table 2), by using his

memory, estimating figures, and looking at old check registers and assorted receipts. At the time of filing his tax returns for the years in issue petitioner did not keep his tax records in an organized manner.

On his 1982 tax return, petitioner reported his rental income on line 24 (other income) of the Form 1040, and did not provide any information as to what the properties were, what the gross rentals were, and what the expenses were. On his Schedule C, he reported only the total amount of the deductions (with a breakdown of the deductions on separated sheets attached to the tax return) but no gross receipts from any business or profession; six of the items on the expenses breakdown are shown as estimates. On his Schedule D, he reported a net amount for capital gains, without showing any of the other information required by the form. Similarly, on his Schedule E, he reported merely a lump sum of royalty income; he did not provide any information as to what the properties were, what the gross royalties were, and what the expenses were. Similarly, on his Schedule F, he reported merely a lump sum of gross income from farming, without any of the other information required by the form.

On his 1983 tax return, petitioner failed to attach Schedules D and E, even though he reported on the Form 1040 that he had income from capital gains, rents, and royalties.

On his 1984 tax return, petitioner failed to attach

Schedules B and E, even though he reported on the Form 1040 that he had income from interest and royalties. Of the items on the Schedule C, eight are shown as estimates.

On his 1985 tax return, petitioner's Schedules D and E (although attached to the tax return), are uninformative, and, of the Schedule C items, two are shown as estimates.

On his 1986 tax return, petitioner's Schedule E is similarly uninformative, and, of the Schedule C items, two are shown as estimates.

For about 3 years, Douglas J. Juergens (hereinafter sometimes referred to as Juergens), an attorney, shared office and storage space with petitioner in Norman. In or about January 1988, after petitioner had prepared his tax returns for 1982 through 1986, Juergens moved from the shared space. At that time, Juergens had his office equipment, legal files, and miscellaneous records removed from the shared storage space and transported to storage space at Juergens' sister's barn. Some of petitioner's records were inadvertently moved together with Juergens' materials. In or about January 1990, Juergens' sister's barn was destroyed by fire.

Petitioner had two interviews with Burns, both at Burns' office. At the first interview, on June 13, 1989, before the barn fire but after Juergens' move, petitioner brought three boxes of unsorted records relating to 1981 through 1987. Burns briefly looked at these materials, and asked petitioner, in

writing, to sort the materials by year, by whether the item was income or expense, and (as to expenses) by type.' Petitioner took the boxes back when he left Burns' office. At the second interview, on October 31, 1989, petitioner brought sorted but incomplete records, but only for 1985. The 1985 records were mostly bank records. Petitioner did not provide any other records to respondent before the notice of deficiency was sent.

On each of his tax returns for the period 1982 through 1986, petitioner's only stated occupation is "Attorney", except that he also shows farm income on his 1982 tax return.

For each of these years, petitioner claims either a negative adjusted gross income or a loss carryforward, and shows no tax liability. Petitioner does not itemize deductions on any of these tax returns. Petitioner does not show any liability for self-employment taxes on any of these tax returns.

<u>Income</u>

On his tax returns, petitioner reports income or gross receipts in the amounts shown in table 3.

Table 3

| Category | 1982 | 1983 | 1984 | 1985 | 1986 |
|---|---|---|---|---|---|
| Wages, etc. | $46,943 | $26,400 | $24,000 | -0- | -0- |
| Interest | 4,187 | -- | [1]2,304 | [2]$100 | [2]$10 |
| Sched. C (gross rcpts) | - | 1,095 | [2]1,000 | [3]13,448 | 23,565 |
| Capital gain | 8,207 | 21,600 | -0- | 40,000 | -- |
| Royalties | 14,318 | 33,599 | 37,979 | 21,641 | [2]12,500 |

| | | | | | |
|---|---|---|---|---|---|
| Other--Farm (gross rcpts) | 7,538 | -- | -- | -- | -- |
| Rentals | [2]15,026 | 1,000 | -- | -- | -- |
| Seismic Fees | 700 | -- | -- | -- | -- |

[1] Shown as $2,227.50 on Form 1040, line 8, plus $76.82 on line 22.
[2] Shown as "estimated".
[3] Shown as (a) "estimated--miscellaneous" $1,000, (b) witness fee $2,150, and (c) attorney fees $10,297.50.

Schedule C Income

In the notice of deficiency, respondent determined that petitioner failed to report $343,867 of Schedule C gross receipts for 1982. Respondent has since conceded that this amount should be $185,512. See supra note 2. Respondent determined this unreported income by using the source and application of funds method.

Table 4 shows, as to the components of the source and application of funds method, (1) what petitioner reported on his 1982 tax return, (2) what respondent determined in the notice of deficiency, (3) what respondent contends for on brief, and (4) what the Court redetermined.

Table 4

| Sources | Petitioner Reported | Respondent Def. Notice | Respondent Brief | Court's Findings |
|---|---|---|---|---|
| | | Source and Application of Funds--1982 | | |
| Wages | $46,943 | $46,943 | $46,943 | $46,943 |
| Interest income | 4,187 | 4,187 | 4,187 | 4,187 |
| Seismic fees | 700 | 700 | 700 | 700 |
| Capital gains[1] | 8,207 | 8,207 | 20,517 | 20,517 |
| Rental income | 15,026 | 14,318 | 15,026 | 15,026 |
| Farm income | 7,538 | 7,538 | 7,538 | 7,538 |
| Royalty income[2] | 14,318 | 10,329 | 24,647 | 24,647 |
| Loans | -- | 32,452 | 26,500 | 32,452 |
| Total sources of funds | 96,919 | 124,674 | 146,058 | 152,010 |
| **Applications** | | | | |
| Expenditures reflected on Schedule C | 318,112 | 318,112 | 318,112 | 318,062 |
| Reduced by: depreciation | 6,250 | 6,250 | 6,250 | 6,250 |
| write-offs | 137,000 | -- | 137,000 | 137,000 |
| Net Expenditure needing funds | -- | 311,862 | 174,862 | 174,812 |
| Purchase of assets | -- | 132,979 | 133,008 | 48,211 |
| Petitioner's draw | -- | 23,700 | 23,700 | 23,700 |
| Total application of funds | -- | 489,541 | 331,570 | 246,723 |
| Understatement of income (applications minus sources) | -- | 343,867 | 185,512 | 94,713 |

[1] On his 1982 tax return, petitioner reported $8,207 of capital gain on line 13 of Form 1040. Although he attached a Schedule D to the Form 1040, petitioner did not provide any underlying amounts on the Schedule D. Sec. 1202(a) as in effect for 1982 allowed a deduction from gross income of 60 percent of the amount of an individual's net capital gain, but not short-term capital gain. Sec. 1222. By the time of the trial, and on brief, respondent evidently assumed that all of the reported $8,207 was net capital gain, after the 60-percent deduction, notwithstanding that petitioner showed the $8,207 on the Schedule D as short-term capital gain. Burns testified that "I divided the $8,207 by 40 percent to back into the $20,517 figure to give Mr. Hall the benefit of that source of income as a capital gain item which-would be the full amount." Implicit in respondent's determination in the notice of deficiency is the determination that petitioner had no tax bases in what he sold; i.e., that his gains amounted to his total receipts from the sales of capital assets.

[2] See infra, text following note 9 reference, for a discussion of respondent's concession as to this component of the source and application of funds method.

Interest Income

Table 5 shows the amounts of interest income that petitioner reported on his tax returns (supra table 3), that respondent determined in the notice of deficiency, that petitioner actually received, and that petitioner omitted to report.

Table 5

| | Interest Income | | | |
|------|----------|------------|--------|---------|
| Year | Reported | Respondent | Actual | Omitted |
| 1982 | $4,187   | [1]        | $4,187 | -0-     |
| 1983 | --       | [1]        | --     | -0-     |
| 1984 | 2,304    | 4,419      | 4,419  | 2,115   |
| 1985 | 100      | 2,372      | 2,356  | 2,256   |
| 1986 | 10       | 2,297      | 2,297  | 2,287   |

[1] Respondent did not adjust petitioner's interest income for these years.

Royalties Income

Table 6 shows the amounts of royalty income that petitioner reported on his tax returns (supra table 3), that respondent determined in the notice of deficiency, that petitioner actually received, and that petitioner omitted to report.

Table 6

| | Royalty Income | | | |
|---|---|---|---|---|
| Year | Reported | Respondent | Actual | Omitted |
| 1982 | $14,318 | $24,647 | $14,318 | [1]-0- |
| 1983 | 33,599 | [2]64,469 | 64,469 | $30,870 |
| 1984 | 37,979 | 67,575 | [3]67,575 | 29,596 |
| 1985 | 21,641 | 23,954 | 21,641 | -0- |
| 1986 | 12,500 | 25,730 | 25,730 | 13,230 |

[1] As to 1982, see infra note 11 and text following note 9 reference.

[2] Respondent determined petitioner's royalty income for 1983 by taking the 1984 royalty income amount that respondent had determined, and adjusting that figure downward according to the change in the Consumer Price Index.

[3] One of the 1984 royalty items was from Phillips Petroleum Co., in the amount of $32,213, from which $6,408 was withheld. Petitioner did not claim credit for this withholding on his 1984 income tax return.

## Deductions

On his 1982 tax return, petitioner claimed Schedule C depreciation deductions as shown in table 7.

Table 7

| Asset | Depreciation Claimed |
|---|---|
| 1981 Chevrolet pickup truck | $1,774 |
| House trailer | 1,776 |
| 1979 Cessna 180 | 1,900 |
| Tractor and implements | 800 |
| Total | 6,250 |

Petitioner used the 1981 Chevrolet pickup truck to some extent in his law practice and Hall Farms. He also used the pickup truck to drive to and from work, and to look at drilling rigs. In 1982 petitioner paid $1,087 interest to GMAC on a loan to finance his buying of this pickup truck. Petitioner, rather

than one of the Corporations, owned the pickup truck. In 1982 petitioner had a depreciable basis in this pickup truck. For 1982, $200 of petitioner's depreciation on this pickup truck is attributable to petitioner's law practice and his farming activities

Petitioner used the house trailer in connection with his drilling activities. In 1982 petitioner paid $1,776 interest to G.E. Credit on a loan to finance the buying of this trailer.

Petitioner used the 1979 Cessna 180 airplane in his drilling activities--to haul fittings to drilling rigs, to go look at drilling rigs, and to go look at property. In 1982 petitioner paid (1) $1,542 interest to Cessna Finance on a loan to finance the buying of this airplane, (2) $789 maintenance costs, and (3) $1.080 hangar rent.

Petitioner used the tractor and implements on the Atoka Ranch. In 1982 petitioner paid (1) $1,789 interest to John Deer Co. on a loan to finance the buying of this tractor, (2) $10,000 interest to Federal Land Bank of Durant to finance the buying of 1,000 acres of the Atoka Ranch, and (3) $413 interest to First Bank in Atoka to finance the buying of a 20-acre tract next to the 1,000-acre tract.

In 1982 petitioner paid interest in the amounts shown in table 8.

Table 8

| Payee | Amount Paid |
|---|---|
| Citizens National Bank, E1 Reno | $30,804 |
| Security Nat'l. Bank, Norman | 5,383 |
| GMAC | 1,087 |
| Am. Exchange Bank, Norman | 1,164 |
| Federal Land Bank of Durant | 10,000 |
| Friendly National Bank | 6,314 |
| First Bank in Atoka | 413 |
| G.E. Credit | 1,776 |
| John Deere | 1,789 |
| City National Bank, Norman | 539 |
| American Mortgage & Investment | 534 |
| Wells Fargo Credit | 5,783 |
| First State Bank, Stroud | 22,500 |
| Cessna Finance | 1,542 |
| First National Bank, Oklahoma City | 4,068 |
| Local Fed. S&L | 5,382 |
| Sooner Fed. S&L | 3,856 |
| Total | 102,994 |

Petitioner claimed Schedule C interest expense deductions on his tax returns for 1982 ($102,994), 1983 ($33,599), 1984 ($36,058), and 1985 ($24,293). He did not claim such a deduction on his tax return for 1986.

Petitioner's $30,804 interest payments in 1982 to Citizens National Bank, E1 Reno, was on loans aggregating about $350,000. About $125,000 of these loans was to finance a shop building that was used for Empire. About $100,000 of these loans was to finance speculative houses in the Oak Brook Estates addition, a housing development involving Stroud Builders and Stroud Land.

Petitioner's $5,383 interest payments in 1982 to Security National Bank, Norman, were on loans aggregating about $50,000 to finance activities of Brazos. Petitioner paid these amounts on

behalf of Brazos.

Petitioner's $1,087 interest payments in 1982 to GMAC were on a loan to finance his pickup truck, described supra. For 1982, $125 of petitioner's interest on the loan to finance this pickup truck is attributable to petitioner's law practice and his farming activities.

Petitioner's $1,164 interest payments in 1982 to American Exchange Bank, Norman, were on a loan to finance a "rent house" that petitioner owned. On his 1982 tax return petitioner reported an estimated $15,026 rental income. Supra table 3. The record does not permit us to determine whether there was any relationship between the "rent house" and the reported rental income.

Petitioner's $10,000 interest payments in 1982 to Federal Land Bank of Durant on a loan of about $120,000 were to finance a 1,000-acre ranch in Atoka. On his 1982 tax return petitioner reported $7,538 farm income. Supra table 3. The notation "Wheat" appears on this tax return on the same line as the income amount. The record does not permit us to determine whether there was any relationship between the Atoka ranch and the reported farm income.

Petitioner's $6,374 interest payments in 1982 to Friendly National Bank were on a loan to finance wire-form equipment that was used for a business petitioner had an interest in. The record does not permit us to determine the nature of petitioner's

interest in the business.

Petitioner's $413 interest payments in 1982 to First Bank in Atoka were on a loan to finance the 20-acre tract next to the Atoka ranch, discussed <u>supra</u>.

Petitioner's $1,776 interest payments in 1982 to G.E. Credit were on a loan to finance the house trailer, discussed <u>supra</u>.

Petitioner's $1,789 interest payments in 1982 to John Deere were on a loan to finance the tractor used on the Atoka ranch. The tractor and the ranch are described <u>supra</u>.

The record does not permit us to determine the purpose of petitioner's $539 interest payments in 1982 to City National Bank, Norman.

Petitioner's $534 interest payments in 1982 to American Mortgage & Investment were on a loan to finance a "small rent house" that petitioner owned in part of 1982. See <u>supra</u> discussion of petitioner's payments to American Exchange Bank, Norman.

Petitioner's $5,783 interest payments in 1982 to Wells Fargo Credit were on a loan to finance the Interurban Building in Norman. The record does not permit us to determine the nature of petitioner's interest in the Interurban Building, nor whether this was connected with the reported rental income. <u>Supra</u> table 3.

Petitioner's $22,500 interest payments in 1982 to First State Bank, Stroud, were on a loan to finance housing in the Oak

Brook Estates addition. See supra discussion of petitioner's payments to Citizens National Bank, E1 Reno.

Petitioner's $1,542 interest payments in 1982 to Cessna Finance were on a loan to finance the airplane, described supra.

Petitioner's $4,068 interest payments in 1982 to First National Bank, Oklahoma City, were on a loan to finance his and his father's buying of bank stock.

Petitioner's $5,382 interest payments in 1982 to Local Federal S & L were on a loan to finance a "rent house". Petitioner's $3,856 interest payments in 1982 to Sooner Federal S & L were on a loan to finance a "rent house/office property". See supra discussion of petitioner's payments to American Exchange Bank, Norman.

Petitioner spent the following amounts on Oklahoma Bar Association dues: 1982--$100; 1983--$100; 1984--$200; and 1985--$200. Petitioner spent $150 on charitable contributions in 1982. Petitioner spent $789 on maintenance and $1,080 on hangar rent in 1982 for the airplane described supra: Petitioner spent $1,062 on farm expenses in 1982. Petitioner spent $3,500 on office rent in 1982; he claimed $10,972 and $3,000 for this purpose on his tax returns for 1984 and 1985, respectively. Petitioner spent $1,644 on law books in 1982. Petitioner spent $1,050 on rental property expenses in 1982. Petitioner spent $3,623 on travel and entertainment in 1982; he claimed $8,922, $2,440, and $5,782 ($169 on travel plus $5,613 on entertainment) on his tax returns

for 1983, 1985, and 1986, respectively. Petitioner claimed deductions of $137,000 for "write-offs" on his tax return for 1982, $6,300 and $19,229 for bad debts on his tax returns for 1983 and 1984, respectively, and $36,451 for loan or investment loss on his tax return for 1985. On other items listed on the Schedules C of his tax returns, petitioner spent $58,874 for 1982; he claimed deductions of $18,872 for 1983, $14,137 for 1984, $14,799 for 1985, and $5,426 for 1986. Large portions of these other items may fairly be described as office expenses.

_____

Respondent exercised due care and diligence in ascertaining petitioner's correct mailing address before mailing the notice of deficiency to petitioner on September 14, 1990. The notice of deficiency was mailed to petitioner's last known address.

Respondent's use of the Consumer Price Index method of royalty income reconstruction for 1983 was reasonable.

The Corporations were corporations and remained corporations throughout the years in issue. The expenses of the Corporations are not expenses of petitioner's trade or business.

Petitioner's office expenses that are deductible expenses of his trade or business are in the following amounts: For 1982-- $27,000, for 1983--$8,000, for 1984--$5,000, for 1985--$3,000, and for 1986 $1,000.

Petitioner was negligent in preparing his tax returns for 1983 through 1986.

OPINION

A few preliminary comments: Petitioner created a number of corporations. Petitioner tells us that he largely ignored their separate existences. However, on this and many other matters petitioner presented us with little more than his general conclusory testimony, and his claim that his tax returns (filed about 1 to 5 years late) were accurate.

We have done what we could with a relatively confusing record which, we believe, generally reflects the underlying confusion in the factual situation.

## I. Statute of Limitations

In general section 6501(a)[5] bars assessment of an income tax deficiency more than 3 years after the later of (1) the date the tax return was filed or (2) the due date of the tax return. If the taxpayer proves that the notice of deficiency was mailed more than 3 years after the later of the filing or the due date, then respondent has the burden of pleading and proving the existence of an exception to the general period of limitations. Stratton v. Commissioner, 54 T.C. 255, 289, modified on another issue 54 T.C. 1351 (1970); Farmers Feed Co. v.-Commissioner, 10 B.T.A.

---

[5]SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title [title 26, the Internal Revenue Code] shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

1069, 1075-1076 (1928); see <u>Miami Purchasing Service Corp. v. Commissioner</u>, 76 T.C. 818, 823 (1981); see also <u>Minahan v. Commissioner</u>, 88 T.C. 492, 506 (1987).

Petitioner argues that the notice of deficiency was not mailed to him until November 9, 1990, which is more than 3 years after he filed his tax returns for 1982, 1983, and 1984 (see <u>supra </u>table 2), and that assessment for those years is thus barred by the statute of limitations. He contends that the notice of deficiency mailed to the I.R.S. Classen address on September 14, 1990, was invalid because it was not mailed to his last known address and he did not receive it. He contends that he notified respondent to use the P.O. drawer address and not the Classen address.

Respondent contends, firstly, that the September 14, 1990, notice of deficiency was mailed to petitioner's last known address within 3 years after petitioner filed his tax returns for 1982 through 1986. Secondly, respondent contends that, even if the Court concludes that the September 14, 1990, notice of deficiency was not mailed to petitioner's last known address, then this notice of deficiency is nevertheless valid because petitioner received it and timely filed a petition with this Court. Thirdly, respondent contends that, even if the September 14, 1990, notice of deficiency is not valid, then the November 9, 1990, notice of deficiency is timely, because petitioner omitted more than 25 percent of his gross income for 1982 through 1984,

and thus that pursuant to section 6501(e) the applicable period of limitations for assessment of tax for 1982 through 1984 is any time within 6 years after the tax returns for these years were filed.

We agree with respondent's first argument.[6]

> It is well settled that a notice of deficiency mailed to the taxpayer's last known address is valid for all purposes from the date. of its mailing whether or not the taxpayer actually receives it.

Frieling v. Commissioner, 81 T.C. 42, 48 (1983); sec. 6212(b)(1).[7]

As we stated in Monge v. Commissioner, 93 T.C. 22, 27-28 (1989)--

> The phrase "last known address" is not defined by the Code or regulations. In construing it, this and other courts have focused on the Commissioner's knowledge, rather than on what in fact may have been the taxpayer's actual address.

---

[6]Because of our conclusion as to respondent's first argument, it is not necessary to decide respondent's second and third arguments.

[7]Sec. 6112(b)(1) provides, in pertinent part, as follows:

SEC. 6212. NOTICE OF DEFICIENCY.

* * * * * *

(b) Address for Notice of Deficiency.--

(1) Income and gift taxes and certain excise taxes.--In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, * * * if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, * * * and this chapter even if such taxpayer is deceased, or is under a legal disability, or in the case of a corporation, has terminated its existence.

Generally, a taxpayer's "last known address" is the address to which, in light of all surrounding facts and circumstances, respondent reasonably believed the taxpayer wished the notice of deficiency to be sent. [Citations omitted.]

The record does not indicate that before September 14, 1990, petitioner filed any tax returns after he filed his 1986 tax return, on January 19, 1988. See supra table 2. Thus, when the notice of deficiency was sent, the most recently filed tax return was the 1986 tax return. The address shown on the 1986 tax return is the tax return Classen address. (The bankruptcy discharge order, which shows the P.O. drawer address, preceded petitioner's filing of his tax returns for 1982 through 1986.) The address to which the September 14, 1990, notice of deficiency was sent (the I.R.S. Classen address) is the same as the tax return Classen address, except for the ZIP code. The tax return Classen address includes the ZIP code 73069; the I.R.S. Classen address includes the ZIP code 73071-4616. Each U.S. Postal Service's annual National Five-Digit ZIP Code and Post Office Directory for 1987 through 1993 shows that (1) Classen Blvd. for Norman, Oklahoma, is in ZIP code 73071, (2) Classen Cir. for Norman, Oklahoma, is in ZIP code 73072, and (3) ZIP code 73069 is in Norman, Oklahoma, but does not include any street named "Classen". We conclude (a) that petitioner erred on his tax returns, as well as other documents referred to in our findings, when he used the ZIP code 73069, and (b) that respondent's use of the I.R.S. Classen address on the September 14, 1990, notice of

deficiency was in effect the use of the address shown on petitioner's most recently filed tax return. See Armstrong v. Commissioner, 15 F.3d 970, 972, 974 (10th Cir. 1994), affg. T.C. Memo. 1992-328.

In Abeles v. Commissioner, 91 T.C. 1019, 1035 (1988), we stated as follows:

> a taxpayer's last known address is that address which appears on the taxpayer's most recently filed return, unless respondent has been given clear and concise notification of a different address. * * *

Whether such a "clear and concise notification of a different address" has been given is a question of fact and the burden of proving such a notification is on petitioner. Cyclone Drilling Inc. v. Kelley, 769 F.2d 662, 664 (10th Cir. 1985); Monge v. Commissioner, 93 T.C. at 31. On the facts thus far discussed, we must rule that respondent sent the notice of deficiency on September 14, 1990, to petitioner's last known address, unless we conclude that petitioner met his burden of proving that he gave to respondent a "clear and concise notification of a different address".

We have found that Spencer telephoned petitioner on July 30, 1990, and verified that the I.R.S. Classen address was petitioner's mailing address. We have found that Mackenzie checked on or about November 7, 1990, and did not find in respondent's case file or on respondent's computer any written notification of a change of address for petitioner before petitioner's October 23, 1990, letter.

Petitioner testified after receipt of the evidence on which the foregoing findings are based, but his testimony did not deal with these matters. Petitioner also testified earlier in the trial, and stated that he had advised Burns' successor that the P.O. drawer address should be used as his last known address.

Petitioner has not told us when he notified Burns successor, nor whether the notification was oral or written, nor what words he used. As a result, we have no way of knowing (1) whether the notification was before July 30, 1990, and so was superseded by Spencer's July 30 telephone conversation with petitioner, or was after September 14, 1990, and so was too late, because the notice of deficiency had already been mailed (see, e.g., Armstrong v. Commissioner, 15 F.3d at 975); (2) why MacKenzie's early-November examination of the case file or the computer records did not reveal any such notification; and (3) whether we would conclude that petitioner's words constitute a "clear and concise notification of a different address".

We conclude, and we have found, that respondent exercised due care and diligence in ascertaining petitioner's correct mailing address and mailing the notice of deficiency to petitioner at the correct address on September 14, 1990. Monge v. Commissioner, 93 T.C. at 33. We conclude, and we have found, that respondent mailed the notice of deficiency to petitioner at his last known address on September 14, 1990. Accordingly, the September 14, 1990, notice of deficiency is valid; it was mailed

within 3 years after the tax returns for 1982, 1983, and 1984 were filed. The notice of deficiency is timely and assessment of deficiencies for these years is not barred by the statute of limitations.

We hold for respondent on this issue.

## II. Income

Under section 61(a)[8] petitioner is required to include in gross income for 1982 through 1986 the business income, interest, and royalties he received in these years. Also--

> Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liabilities. Where a taxpayer fails to keep the required books and records, or if the records he or she maintains do not clearly reflect income, then respondent is authorized by section 446 to reconstruct income in accordance with a method which clearly reflects the full amount of income received. The reconstruction need only be reasonable in light of all surrounding facts and circumstances. [Citations omitted.]

Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989), and cases

---

[8]Sec. 61(a) provides, in pertinent part, as follows:

SEC. 61. GROSS INCOME DEFINED.

(a) General Definition.--Except as otherwise provided in this subtitle (subtitle A, income taxes], gross income means all income from whatever source derived, including (but not limited to) the following items:

* * * * * * *
(2) Gross income derived from business;

* * * * * * *
(4) Interest;

* * * * * * *
(6) Royalties;

cited therein; see also <u>Erickson v. Commissioner</u>, 937 F.2d 1548, 1552-1553 (10th Cir. 1991), affg. T.C. Memo. 1989-552.

## A. Schedule C Income--1982

Petitioner contends that he reported all income that was known to him, and that any difference between expenses and revenue came from loans or from disinvestment, e.g., sales of assets. Petitioner also claims that on December 31, 1981, he had a net worth of more than $1 million, and points out that by 1987 he was bankrupt.

Respondent contends that petitioner received and omitted Schedule C income for 1982 in the amount of $185,512. See <u>supra</u> table 4, for a comparison of respondent's determinations in the notice of deficiency and respondent's position on brief.

We agree in part with respondent and in part with petitioner.

### (1) Background

When petitioner filled out his tax returns for the years in issue (<u>supra</u> table 2), he did so by using his memory, estimating figures, and looking at old check registers and assorted receipts. Petitioner did not keep his records in an organized manner. About 4 months after petitioner filed his 1982 tax return, and just after he filed his 1986 tax return, in January 1988, some of petitioner's records were inadvertently shipped away. In June 1989, petitioner brought three boxes of unsorted records to Burns' office, but was told to take them back and sort

them properly. In October 1989, petitioner brought sorted but incomplete records for 1985 to Burns' office. In or about January 1990, a barn fire apparently destroyed the records that had been inadvertently shipped away 2 years earlier.

The instant case's record does not indicate the nature or extent of petitioner's records destroyed in the January 1990 fire. The instant case's record does not indicate the nature or extent of petitioner's 1982 records included in the three boxes that petitioner brought to--and took back from--Burns' office in June 1989, except that the boxes appeared to include records from 1981 through 1987.

In any event, petitioner did not provide to respondent the records for 1982 sufficient for respondent to determine petitioner's 1982 tax liability. Consequently, respondent determined petitioner's taxable income for 1982 by using the source and application of funds method of reconstructing income.

In general, the source and application of funds method of reconstruction assumes, absent some explanation by-the taxpayer, that the amount by which a taxpayer's expenditures during a tax year exceed that taxpayer's reported income has taxable origins. As explanation, the taxpayer may show that the difference between the total application of funds and the total reported sources of funds is attributable to such nontaxable items as loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. The method has been equated with the cash-expenditures

method and sometimes characterized as the sources-and-expenditures method, the excess-cash-expenditures method, or the expenditures test. It differs from the "classic" cash expenditures test in that the latter test ordinarily (but not always) involves determinations of the taxpayer's changes in net worth, while the source and application of funds method assumes that net worth remains the same at the beginning and end of the taxable period unless the taxpayer shows otherwise. See, e.g., Erickson v. Commissioner, 937 F.2d at 1553, affg. T.C. Memo. 1989-552; Petzoldt v. Commissioner, 92 T.C. at 694; DeVennev v. Commissioner, 85 T.C. 927, 930-931 (1985); Wilcox v. Commissioner, T.C. Memo. 1992-434, affd. without published opinion 17 F.3d 1437 (10th Cir. 1994); Jones v. Commissioner, T.C. Memo. 1983-110; Cox v. Commissioner, T.C. Memo. 1980-244; Roundtree v. Commissioner, T.C. Memo. 1980-117.

(2) Sources of Funds

As table 4, supra, shows, most of the 1982 sources of funds are not disputed. The derivation of the capital gains amount is described in note 1 to table 4. Petitioner should be given credit for the entire proceeds of his capital transactions, not merely his capital gains. However, petitioner has not provided any information from which we could conclude that his basis in any of the sold items was greater than zero. As a result, petitioner has failed to show that he should be treated as having

more than $20,517[9] in funds from his capital transactions.

In the notice of deficiency, respondent determined that petitioner had $24,647 royalty income for 1982, instead of the $14,318 that petitioner reported on his tax return, for an adjustment of $10,329. However, in calculating petitioner's omitted Schedule C income in the notice of deficiency, respondent treated petitioner as having only $10,329 royalty income. These two determinations clearly are inconsistent. On brief, respondent changed both of these determinations in petitioner's favor. In particular, respondent (1) concedes on brief that petitioner should be treated as having $24,647 of 1982 royalty income for purposes of determining petitioner's omitted Schedule C income, and also (2) concedes the entire 1982 royalty income adjustment. One might argue that respondent clearly was obligated to change either one of these determinations, but not both. However, respondent chose to make both changes, and so our findings embody both of respondent's concessions.

In the notice of deficiency, respondent determined that $32,452 of petitioner's sources of funds for 1982 came from loans. On brief, respondent chooses to give petitioner credit for only $26,500 of loans. The only evidence or explanation provided for this assertion of a $5,952 increase in petitioner's unreported Schedule C income is Burns' testimony at trial that

---

[9]On brief, at one point (proposed finding 37) respondent shows this amount as $20,217. However, it is evident that $20,517 is intended.

"The last line in the sources of funds, loans, are [sic] taken from three deposit slips which Mr. Hall provided that were annotated as such, as loans from other sources." Against this is petitioner's unedifying assertion that he received substantial amounts of loans. The record does not enable us to determine how much petitioner received as loans. Our finding in table 4, supra, merely reflects each side's failure to persuade us that the notice of deficiency was wrong on this point.

Petitioner contends that his 1982 expenditures can be accounted for in some indeterminate amount by disinvestment. As we noted, supra, petitioner did not provide any evidence that he had any basis in the assets he sold that produced his claimed capital gain. Accordingly, there is no foundation for finding that more than $20,517 of funds came from petitioner's disinvestment. In addition, we note that petitioner claimed on his tax return $137,000 of "Write-off of Expenses or Investments". Evidently, petitioner did not dispose of the $137,000 in 1982 or earlier in any way that produced funds that petitioner could use in 1982. Petitioner has not presented any evidence from which we could conclude that his disinvestments-- whatever form they took--produced more than $20,517 of funds for petitioner's 1982 use.

Finally, nothing in the record would justify a finding that petitioner had a cash hoard on December 31, 1981, that he

consumed to any extent during 1982.

Based on the foregoing, we conclude, and we have found, that petitioner has accounted for the sources of $152,010 that was expended by him in 1982. See supra table 4.

(3) Applications of Funds

The first item on the Applications portion of table 4, supra, Expenditures Reflected on Schedule C in the amount of $318,112, merely copies the amount that petitioner claims as deductions on Schedule C of his 1982 tax return. However, addition of the items listed on the business expenses schedule attached to petitioner's tax return shows the correct total of his claimed business expenses to be $318,062. Because the source and application of funds method requires a determination of petitioner's actual expenditures, we use as our starting point the correct total of petitioner's claimed business expenses-- $318,062.

We agree with respondent's determinations to subtract petitioner's claimed depreciation ($6,250) and "write-off" ($137,000) deductions, because these items do not appear to involve 1982 expenditures of funds. As shown in table 4, supra, this leaves net expenditures needing funds in the amount of $174,812.

We also agree with respondent's determination in applying the source and application of funds method to determine petitioner's omitted Schedule C income, to take into account as categories of expenditures (1) petitioner's purchase of assets

and (2) amounts shown in Exhibit G (discussed infra) in columns under certain headings ("Bill Hall", "Draw", "Bill Hall Draw", "Hall Draw", and "Bill Draw"), because these items do appear to involve 1982 expenditures of funds, and we agree with respondent's determination not to take into account certain other expenses, because they might represent duplications of expenses shown on petitioner's 1982 tax return.

In the notice of deficiency, respondent determined that petitioner spent $132,979 on purchase of assets in 1982. At trial and on brief, respondent contends the correct amount is slightly greater, $133,008. Respondent has consistently taken the position that petitioner drew $23,700 from a bank account for his personal use.

At trial, Burns,explained (1) that he determined the amount of assets that petitioner bought in 1982 by looking at some of petitioner's account ledgers, specifically those items identified in the ledgers as assets being purchased, (2) that he determined the amount of petitioner's drawing account by looking at these ledgers, and (3) that he did not take into account other expenses reflected on these ledgers because they might have represented duplications of other expenses shown on petitioner's 1982 tax return. Burns identified Exhibit G as the material he examined in making his determinations, as follows:

> Q [MOATES] Mr. Burns, is this the account ledgers that you are referring to?

> A [BURNS] Yes.

Q And from these account ledgers you ascertained that there was a purchase of assets?

A Yes, $133,008. Those were for items which were actually assets being purchased that were identified in the descriptions.

We have carefully examined Exhibit G and agree with Burns as to the $23,700 of petitioner's draw. However, when we followed Burns' description of how he arrived at $133,008 for purchases of assets, we arrived at only $48,211. Doing the best we could with an inadequate record, we conclude, and we have found (supra table 4), that in 1982 petitioner spent $48,211 (and not more than that) on purchase of assets and that petitioner's 1982 draw amounted to $23,700.

As table 4, supra, shows, petitioner's total application of funds in 1982 was $246,723. We subtract from this the accounted-for funds in the amount of $152,010. The difference of $94,713, we conclude and we have found, is an understatement of Schedule C income.

We hold for respondent on this issue to the extent of $94,713; we hold for petitioner as to the remainder.

B. Interest Income--1984 Through 1986

Petitioner contends that he reported all income that was known to him, and that he had no income other than what he reported on his tax returns for the years in issue.

Respondent contends that petitioner received and failed to report interest income in the amounts of $2,115 for 1984, $2,272 for 1985, and $2,287 for 1986.

We agree almost entirely with respondent.

Forms 1099 reporting interest paid to petitioner were issued to petitioner for 1984 through 1986 by five payors. Petitioner has not challenged the accuracy of these forms; thus we do not reach the issue involved in <u>Portillo v. Commissioner</u>, 932 F.2d 1128 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68.

The Form 1099 information matches respondent's interest determinations in the notice of deficiency, except for $16 as to 1985. See supra table 5. Respondent determined that First Oklahoma Savings Bank paid $89 to petitioner in 1985. However, the Form 1099 information that the parties stipulated shows only $73. Although petitioner has made general denials about receiving income in excess of what he reported, they are not directed to any specific interest item. Thus, apart from the one $16 discrepancy, the little evidence that is in the record supports respondent's determination. In any event, petitioner has otherwise failed to carry his burden of proving respondent's determination to be in error. Rule 142(a);[10] <u>Welch v. Helvering</u>, 290 U.S..111, 115 (1933).

From the foregoing we conclude, and we have found <u>(supra table 5)</u>, that petitioner received and failed to report interest income in the amounts of $2,115 for 1984, $2,256 for 1985, and $2,287 for 1986.

---

[10] Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

We hold for respondent on this issue, except that we hold for petitioner as to $16 for 1985.

## C. Royalty Income--1983[11] Through 1986

Petitioner contends that he reported all income that was known to him, and that he had no income other than what he reported on his tax returns for the years in issue.

Respondent contends that petitioner received and failed to report royalty income in the amounts of $30,870 for 1983, $29,596 for 1984, $2,313 for 1985, and $13,230 for 1986.

We agree with respondent as to 1983, 1984, and 1986; we agree with petitioner as to 1985.

## (1) 1984 and 1986

Forms 1099 reporting royalty income distributed to petitioner were issued to petitioner for 1984 by seven payors and for 1986 by five payors. Petitioner has not challenged the accuracy of these forms.

The Form 1099 information matches respondent's royalty determinations in the notice of deficiency for 1984 and 1986, except for $6,408 withholding as to 1984. See note 1 to table 6, supra. Respondent determined that Phillips Petroleum Co. paid $32,213 royalty income to petitioner in 1984. This matches the

---

[11]On brief, respondent conceded the $10,329 royalty income adjustment for 1982 ($24,647 royalty income determined, less $14,318 royalty income reported) because "Any underreported royalty income for 1982 would have been included in the adjustment * * * based on the source and application of funds calculation."  See our discussion of this matter supra in the text following note 9 reference.

Form 1099 information. That same Form 1099 information also shows that $6,408 was withheld from the Phillips Petroleum Co. royalty income. Respondent did not give credit to petitioner for this withholding, in calculating the 1984 additions to tax under sections 6651(a)(1), 6653(a)(2), and 6661(a). The effect of this credit will be determined in the computations under Rule 155.

Thus, apart from the 1984 withholding (which in any event does not affect the amount of the deficiency), the little evidence that is in the record supports respondent's determination for 1984 and 1986. In any event, petitioner has failed to carry his burden of proving respondent's determinations to be in error for these years. Rule 142(a); Welch v. Helvering, supra.

From the foregoing we conclude, and we have found (supra table 6), that petitioner received and failed to report royalty income in the amounts of $29,596 for 1984 and $13,230 for 1986.

We hold for respondent on this issue.

(2) 1985

Petitioner reported $21,641 royalty income on his 1985 tax return; respondent determined that the correct amount was $23,954. Supra table 6.

The parties stipulated to Exhibit J as "A summary of Forms 1099 and Forms W-2 for the taxable year 1985". Exhibit J is what the Internal Revenue Service refers to as an IRP document. Exhibit J shows five Forms 1099, from four payors, reporting 1985

royalty income to petitioner in the aggregate amount of $7,137.

At first, Burns testified that the notice of deficiency determinations as to royalty income for 1984, 1985, and 1986 came from the IRP documents for those years. The Form 1099 information on the IRP documents for 1984 and 1986 matches, in both detail and aggregate, respondent's determinations in the notice of deficiency. Later, Burns testified as follows:

> [THE COURT:] Now, Mr. Burns, with regard to Exhibit J there seems to similarly be a summary at the end of that exhibit.
>
> THE WITNESS: Yes, sir.
>
> THE COURT: There I see rents/royalties 7,137, but in Exhibit 0 I see 1985 rents/royalties 23,954; and indeed, the amount shown on the tax return was far in excess of the 7,137. Do you have any explanation of how that might be?
>
> THE WITNESS: I believe we have copies in the files of the 1099s for that period of time. I don't know if they are in the exhibits. I am not that familiar with the exhibits but I believe that we identified all of the 1099s which Mr. Hall had on his return but we had, in addition, the $2,313 from this IRP document. Well, the additional items were from that.
>
> THE COURT: I don't understand. I thought that Exhibit J, the IRP document, was showing all of the 1099s and appropriate other forms.
>
> THE WITNESS: Your Honor, I believe I said that in error. I am positive that we have copies of 1099s in our documentation that verify what Mr. Hall had shown on his return, but in addition, we had the IRP items which are shown on this. I did mis-speak.
>
> THE COURT: Well, why would the IRP be missing so many 1099s?
>
> THE WITNESS: I can't answer that, sir; I don't know.

Respondent's counsel did not (1) produce the other Forms 1099, (2) try to explain why respondent's 1985 IRP (in contrast

to the 1984 and 1986 IRP's) omitted so large a portion of petitioner's royalty income, (3) ask any further questions of Burns, or (4) in any other way attempt to clarify this matter. On brief, respondent relies only on the notice of deficiency and presumption of correctness. Respondent ignores the discrepancy between Exhibit J and the notice of deficiency. Respondent also ignores Burns' testimony.

Burns testified that he was "positive" that respondent had copies of the relevant Forms 1099. Under these circumstances, we may consider that the Forms 1099 would not support respondent's determination. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513, 515-516 (10th Cir. 1947).

From the foregoing we conclude, and we have found (<u>supra</u> table 6), that petitioner reported all his royalty income for 1985.

We hold for petitioner on this issue.

<u>(3) 1983</u>

If petitioner's records are not sufficient to determine his correct tax liability, then respondent is authorized to reconstruct income utilizing a method which is reasonable in light of all surrounding facts and circumstances. <u>Petzoldt v. Commissioner</u>, 92 T.C. at 687.

Petitioner did not provide respondent with records for 1983 sufficient for respondent to determine petitioner's 1983 royalty income. Consequently, respondent determined petitioner's 1983

royalty income by using an indirect method of income reconstruction.

Respondent determined petitioner's royalty income for 1983 by taking petitioner's 1984 royalty income, as shown in table 6, supra, and adjusting that figure downward according to the Consumer Price Index. Respondent thereby concluded that petitioner's 1983 royalty income was $64,469.

Firstly, we note that petitioner has not suggested that respondent's use of the Consumer Price Index method of royalty income reconstruction for 1983 was unreasonable. Secondly, petitioner acknowledged having a substantial amount of royalty income in 1983--he reported $33,599 of royalty income on his tax return for that year--and so cases such as Llorente v. Commissioner, 649 F.2d 152 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980), do not lead to any burden of proof being imposed on respondent on this point in the instant case. See, e.g., Williams v. Commissioner, 999 F.2d 760, 764 (4th Cir. 1993), affg. T.C. Memo. 1992-153; Tokarski v. Commissioner, 87 T.C. 74, 76 (1986). Thirdly, although one might fairly dispute whether a cost-of-living adjustment based on 1984 is the best way to estimate petitioner's 1983 royalty income, we note that (a) the royalty income adjustment for 1983 is very close in amount to the royalty income adjustment for 1984, which was derived from a review of specific Form 1099 information (see supra table 6), and (b) mathematical exactitude is not required of respondent. Petzoldt v. Commissioner, 92 T.C. at 693-694.

Apart from petitioner's general denial, we have not found any evidence in the record that would contradict respondent's determination on this point. Petitioner has failed to carry his burden of proving error in respondent's determination.

We hold for respondent on this issue.

D. Summary

Taking into account our determinations, petitioner's income or gross receipts were in the amounts shown in table 9. See supra tables 3, 4, 5, and 6.

Table 9

| Category | 1982 | 1983 | 1984 | 1985 | 1986 |
|---|---|---|---|---|---|
| Wages, etc. | $46,943 | $26,400 | $24,000 | -0- | -0- |
| Interest | 4,187 | -- | 4,419 | $2,356 | $2,297 |
| Sched.C(gross rcpts.) | 94,713 | 1,095 | 1,000 | 13,448 | 3,565 |
| Capital gain | 8,207 | 21,600 | -0- | 40,000 | -- |
| Royalties | 14,318 | 64,469 | 67,575 | 21,641 | 25,730 |
| Other-- | | | | | |
|   Farm (gross rcpts) | 7,538 | -- | -- | -- | -- |
|   Rentals | 15,026 | 1,000 | -- | -- | -- |
|   Seismic fees | 700 | -- | -- | -- | -- |

Table 9 shows a general deterioration of petitioner's economic condition during the period 1982 through 1986. This led to petitioner's 1987 bankruptcy. Table 9 points up some anomalies, such as an absence of interest income in 1983, but that does not appreciably affect the general picture. We are satisfied that table 9 is as good a representation of petitioner's income or gross receipts as we can get, given the limitations of the record and the parties' contentions in the instant case.

### III. Deductions

A.  In General

Section 161[12] allows deductions in computing taxable income, for the items specified in sections 162 (trade or business expenses), 163 (interest), 165 (losses), 166 (bad debts), and 167 (depreciation), among others.

Deductions are a matter of legislative grace, and a taxpayer seeking a deduction has the burden of overcoming the presumption of correctness that attaches to respondent's factual determinations in the notice of deficiency. Rule 142(a); New Colonial Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. at 115. However, if the record provides sufficient evidence that a cash basis taxpayer has paid and incurred a deductible expense in an amount greater than what respondent allows, but the taxpayer is unable to adequately substantiate the amount of the deduction, then the Court is to estimate the amount of the expense and allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

In Cohan, the taxpayer claimed large travel and

---

[12]SEC. 161. ALLOWANCE OF DEDUCTIONS.

In computing taxable income under section 63, there shall be allowed as deductions the items specified in this part [part VI, relating to itemized deductions for individuals and corporations], subject to the exceptions provided in part IX (sec. 261 and following, relating to items not deductible).

entertainment expense deductions for the period before the Board
of Tax Appeals. We concluded that he had spent much for these
purposes and that expenditures of that sort were deductible.
Nevertheless we did not allow any deduction, because the taxpayer
could not give specific information as to any particular
expenditure. The Circuit Court of Appeals for the Second Circuit
directed as follows:

the Board should make as close an approximation as it can, bearing
heavily if it chooses upon the taxpayer whose inexactitude is of
his own making. But to allow nothing at all appears to us
inconsistent with saying that something was spent. True, we do not
know how many trips Cohan made, nor how large his entertainments
were; yet there was obviously some basis for computation, if
necessary by drawing upon the Board's personal estimates of the
minimum of such expenses. * * * [Cohan v. Commissioner, 39 F.2d at
544.]

Section 162(a)[13] allows a deduction for "all the ordinary
and necessary expenses paid or incurred during the taxable year
in carrying on any trade or business". Section 1.162-1(a),
Income Tax Regs., provides the general rule that deductible
business expenses "include the ordinary and necessary
expenditures directly connected with or pertaining to the
taxpayer's trade or business". Thus, to satisfy the requirements
of section 162(a), an expense must be ordinary and necessary and

---

[13]Sec. 162(a) provides, in pertinent part, as follows:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) In General.--There shall be allowed as a deduction
all the ordinary and necessary expenses paid or incurred
during the taxable year in carrying on any trade or
business, * * *

have the requisite relationship to the taxpayer's business. George R. Halswade, M.D., P.C. v. Commissioner, 82 T.C. 686, 698 (1984). Also, "the trade or business of the corporation must be considered separately from the trade or business of the shareholders." Markwardt v. Commissioner, 64 T.C. 989, 995 (1975).

Section 163(a)[14] allows a deduction for interest paid within the taxable year on indebtedness; the indebtedness, however, must be that of the taxpayer taking the deduction. Southern Pacific Transportation Co. v. Commissioner, 75 T.C. 497, 565 (1980), and cases cited therein. Even if the taxpayer is ultimately liable to pay the interest, the taxpayer is not entitled to an interest deduction unless the liability arises under the indebtedness agreement. Smith v. Commissioner, 84 T.C. 889, 899-901 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986).

Section 165(a) allows a deduction for any uncompensated loss sustained during the tax year. "Losses are deductible only by the taxpayer sustaining them; they are personal to the taxpayer and cannot be transferred to another. New Colonial Co. v. Helvering, 292 U.S. 435 (1934)." Markwardt v. Commissioner, 64 T.C. at 995.

Section 166(a) allows a deduction for any debt which becomes

---

[14]SEC. 163. INTEREST.

    (a) General Rule.--There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

worthless within the taxable year. The deduction is allowable only in respect of a bad debt owed to the taxpayer, sec. 1.166-1(a), Income Tax Regs., and then only to the extent that the taxpayer has a basis in the debt. Perry v. Commissioner, 92 T.C. 470, 477-478 (1989), affd. without published opinion 912 F.2d 1466 (5th Cir. 1990).

Section 167(a)[15] allows a depreciation deduction for a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business or of property held for the production of income. The right to deduct depreciation is based on (1) investment in the property, and (2) the use of the property to produce income for the taxpayer. Currier v. Commissioner, 51 T.C. 488, 492 (1968); Gladding Dry Goods Co. v. Commissioner, 2 B.T.A. 336, 339 (1925).

Respondent contends that petitioner is not entitled to deductions for any of the Schedule C expenses that petitioner claimed on his tax returns for 1982, 1983, 1985, and 1986, and for the net loss petitioner claimed on his Schedule C for

---

[15]Sec. 167(a) provides, in pertinent part, as follows:

SEC. 167. DEPRECIATION.

(a) General Rule.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)--

(1) of property used in the trade or business, or

(2) of property held for the production of income.

1984,[16] because (1) these expenses are corporate expenses, and (2) petitioner has not substantiated that these expenses were ever incurred. or paid.

Petitioner contends (1) that he is entitled to deductions for these business losses in the amounts he claimed; (2) that any expenses of petitioner's business activities are deductible by petitioner, because (a) although most of these entities were formed as corporations, they were not "perpetuated" in that manner, (b) these business entities had their charters suspended for nonpayment of franchise taxes, and (c) petitioner was a "guarantor on everything"; and (3) that his failure to produce adequate records to substantiate payment of these expenses is due to the loss of his records by fire in 1990, and that this loss was beyond his control. Petitioner maintains that regardless of the fact that these business entities were formed as corporations, and that they carried on business activities in their corporate names, their corporate forms should be ignored. Petitioner suggests that because certain corporate formalities were not followed, these business entities were not corporations, and alternatively because their corporate charters were suspended they ceased being corporations.

---

[16]For 1984, petitioner claimed $1,000 Schedule C income and $79,595 Schedule C expenses. Respondent disallowed only $78,595 of the 1984 Schedule C expenses. Respondent has not enlightened us as to which $1,000 of the claimed Schedule C expenses are not disallowed.

We agree in part with respondent[17] and in part with petitioner.

B. Corporate Expenses

As a general rule, a corporation is to be treated as an entity separate from the individuals who own it, and this is true in respect of tax problems. New Colonial Co. v. Helvering, 292 U.S. at 442. An individual who pays the expenses of the corporation generally is not entitled to deduct those payments, unless those expenses are shown to be ordinary and necessary expenses of that individual. Deputy v. du Pont, 308 U.S. 488, 493-495 (1940); Betson v. Commissioner, 802 F.2d 365 (9th Cir. 1986), affg. on this issue and revg. on another issue T.C. Memo. 1984-

---

[17]     As we discussed in connection with A. Schedule C Income-1982, supra (also see supra table 4), the source and application of funds method, as applied for 1982 in the instant case, involves. a conclusion that petitioner indeed spent in 1982 all the money for which he sought a deduction on his 1982 Schedule C, except for his claimed $6,250 depreciation deduction and his claimed $137,000 write-offs deduction. On the instant issue, respondent contends that petitioner must substantiate his claimed deductions, and contends, among other things, that the substantiation requirement means that petitioner must show he paid the amounts he seeks to deduct. We shall not allow respondent to succeed both (1) in the 1982 Schedule C income issue on the assumption that petitioner spent the money in 1982 and (2) in the 1982 deductions issues on the assumption that petitioner did not spend the money in 1982. Respondent cannot have it both ways. See, e.g., Huddleston v. Commissioner, 100 T.C. 17 (1993).
    Accordingly, in light of our holding on the 1982 Schedule C income issue, supra, we treat petitioner as having established that he paid in 1982 the full amount of each of the 1982 items for which he claimed a Schedule C deduction for 1982, except for the claimed depreciation and write-off items.

264; <u>Crouch v. United States</u>, 692 F.2d 97, 99 (10th Cir. 1982). While unusual cases may require disregard of corporate form, <u>Burnet v. Commonwealth Imp. Co.</u>, 287 U.S. 415, 419 (1932), we think the record in the instant case fails to disclose any circumstances sufficient to support such a disregard. Also, petitioner has failed to persuade us that his expenditures for the benefit of any of the Corporations are ordinary and necessary expenses of any trade or business of petitioner's. See <u>Lohrke v. Commissioner</u>, 48 T.C. 679 (1967).

As to the legal status of the Corporations under Oklahoma law and the effect of this status on Federal tax law, see <u>United States v. Young</u>, 604 F. Supp. 164 (N.D. Okla. 1984). In addition, as can be seen from table 1, <u>supra</u>, at any given moment during the 5 years in issue, at least 1, and sometimes as many as 10, of the Corporations not only was in existence but also was in good standing.

From the foregoing we conclude, and we have found, that the expenses of the Corporations are not expenses of petitioner, or of his trade or business, and thus are not deductible by petitioner.

We hold for respondent on this issue. [18]

---

[18]At trial, petitioner suggested that he, rather than the Corporations, was engaged in trades or businesses in addition to petitioner's law practice and Hall Farms, and that he reported his "cash revenue" from those activities on line 7 of the Forms 1040, the line for wages, etc. We pointed out that this was inappropriate for various reasons and, more to the point, our

(continued...)

C. Other Expenses

As tables 3 and 4, supra, show, (1) petitioner reported Schedule C gross receipts of $1,095 for 1983, $1,000 for 1984, $13,488 for 1985, and $3,565 for 1986, and (2) at respondent's urging we have concluded that petitioner had $94,713 Schedule C gross receipts for 1982. Thus, setting aside 1984 (see supra note 16), respondent takes the position that petitioner managed to earn a total of $112,793 in his Schedule C activities without even $1 of deductible expenses. We recognize that some expenditures of a trade or business are not currently deductible for one or more of several reasons; e.g., they are to be capitalized, or they are not ordinarily incurred in such a trade or business, or some provision of law forbids the deduction. Respondent has not suggested that any such bar to deduction of otherwise-substantiated expenditures applies in the instant case. We conclude that petitioner incurred and paid something in each of the years in issue in order to earn the law practice Schedule C income with which we charge him. See

[18](...continued)
views of whether he was in any trade or business and therefore whether he could deduct any expenses of a trade or business might well be affected by his identification of his specific activities in any claimed trade or business and how much income he reported from that trade or business. Petitioner responded that "I would submit that we can deal with this in the briefing matter." Petitioner failed to so deal with this, and so we deem him to have conceded the question of whether he was in any trade or business other than his law practice and Hall Farms. See Sundstrand Corp. v. Commissioner, 96 T.C. 226, 344 (1991); Money v. Commissioner, 89 T.C. 46, 48 (1987).

Cohan v. Commissioner, supra; see also Finley v. Commissioner, 255 F.2d 128, 133 (10th Cir. 1958), affg. 27 T.C. 413, 425 (1956).

(1 ) Depreciation

As shown in table 7, supra, petitioner claims depreciation deductions for a pickup truck, a house trailer, an airplane, and a tractor and implements.

Petitioner used the 1981 Chevrolet pickup truck in his law practice and Hall Farms. As we have pointed out, petitioner is not permitted to deduct expenses of his corporations, but he is permitted to deduct his expenses of the trades or businesses he conducted directly--his law practice and Hall Farms. Petitioner has not shown us what was the amount of his depreciable basis in the pickup truck, nor how much of the use of the pickup truck was for deductible business purposes, as distinguished from use for the businesses of the Corporations and from use for petitioner's personal purposes.

Yet, in 1982 the pickup truck was relatively new and petitioner paid $1,087 interest on a loan to finance this truck. From this we conclude, and we have found, that petitioner had a depreciable basis in the pickup truck in 1982. Also, we have found that petitioner used this pickup truck to some extent in his law practice and Hall Farms activities.

Once we are convinced that there was some trade or business use and that there was some depreciable basis, we are not free to disallow all depreciation deductions merely because we cannot tell

how much is to be allowed. Doing the best we can-with the record in the instant case and applying the principle of Cohan v. Commissioner, 39 F.2d at 543-544, we hold (and we have found) that petitioner is entitled to deduct for 1982 on Schedule C $200 of the claimed $1,774 depreciation on his pickup truck. Gerling International Insur. Co. v. Commissioner, 98 T.C. 640, 659 (1992), and cases cited therein.

Petitioner used the house trailer and the 1979 Cessna 180 airplane in his drilling activities. We do not allow any depreciation deduction for these items because we do not have any information in the instant case's record from which we could conclude (1) that petitioner used these items at all in his trades or businesses, rather than in the trade or business of one of the Corporations, or (2) that petitioner, rather than one of the Corporations, owned the house trailer or the airplane.

Petitioner used the tractor and implements on the Akota Ranch. We do not allow any depreciation deduction for these items because we do not have any information in the instant case's record from which we could conclude (1) that petitioner used these items at all in his trades or businesses, or (2) that petitioner, rather than one of the Corporations, owned the tractor and implements. Nothing in the record connects the tractor and implements, or Akota Ranch, with Hall Farms.

Petitioner has not claimed depreciation deductions, as such,

for any year before us other than for 1982.

We hold for respondent on this issue, except that we hold for petitioner as to $200 for 1982.

(2) Interest Expense

Petitioner paid $102,994 in interest in 1982, and deducted the entire amount on his 1982 tax return as a Schedule C deduction, supra table 8. He also claimed Schedule C interest expense deductions for 1983 ($33,599), 1984 ($36,058), and 1985 ($24,293). He did not claim such a deduction for 1986.

Petitioner paid $1,087 interest on a loan to finance a pickup truck, which he owned, and used for personal, law practice, Hall Farms, and corporate business purposes. Under section 162(a) petitioner is entitled to a Schedule C deduction for this expense to the extent that it was an ordinary and necessary expense of his law practice and Hall Farms. Consistent with our discussion as to depreciation on the pickup truck we hold (and we have found) that petitioner is entitled to deduct for 1982 on Schedule C $125 of the claimed $1,087 interest on the debt to finance his pickup truck. Cohan v. Commissioner, supra; Gerling International Insur. Co. v. Commissioner, supra. The remaining $962 is deductible as an itemized deduction on Schedule A. See secs. 1.163-1(a) and 1.266-1(a)(1), Income Tax Regs.

Petitioner paid $4,068 interest on a loan to finance bank stock, which was owned by petitioner and his father. There is no

indication in the record that this was an expense of any trade or business of petitioner's. Accordingly petitioner is not entitled to a Schedule C deduction for this interest; however, the $4,068 is deductible as an itemized deduction on Schedule A. See <u>Smith v. Commissioner</u>, 84 T.C. at 898.

As to the remaining interest expenses, the record does not show whether petitioner or some other entity took out the loans. From the foregoing we cannot conclude that these claimed interest expenses were petitioner's expenses; thus they are not deductible by petitioner under section 163. These interest expenses are also not deductible as business expense deductions under section 162, or as bad debt deductions under section 166, even though we treat petitioner as having paid these claimed interest expenses, and we accept that petitioner may have been a guarantor on some or all of the loans from which these interest expenses arose. The record in this case simply does not provide the Court with evidence sufficient to determine whether these interest expenses were ordinary or necessary expenses of petitioner's trade or business, nor does the record provide evidence sufficient to determine whether these interest expenses were bad debts becoming worthless during any of the years in issue. From the foregoing we conclude that these claimed interest expenses are not deductible by petitioner.

We hold mostly for respondent on this issue to the extent set forth above.

### (3) "Write-offs", Bad Debts, Loan or Investment Loss

Petitioner claimed deductions of $137,000 for "write-offs" on his tax return for 1982, $6,300 and $19,229 for bad debts on his tax returns for 1983 and 1984, respectively, and $36,451 for loan or investment loss on his tax return for 1985.

At trial, we cautioned petitioner that he would have to show basis, year of worthlessness, and kind of transaction, in order for us to determine (1) whether he was entitled to a deduction, (2) what was the year and amount of any such deduction, and (3) whether the deduction was ordinary (secs. 165(c)(1) and 166(a)(1)), short-term capital loss (secs. 165(g) and 166(d)(1)(B)), or long-term capital loss (sec. 165(g)). Petitioner assured us that he would clarify these matters later. He failed to do so. We assume he has abandoned these claims. See Sundstrand Corp. v. Commissioner, 96 T.C. 266, 344 (1991); Money v. Commissioner, 89 T.C. at 48. In any event, our inspection of the record in the instant case fails to convince us that petitioner suffered any deductible losses or bad debts during the years in issue. Accordingly, petitioner has failed to meet even the minimal requirements of Cohan and Gerling International on this issue.

We hold for respondent on this issue.

### (4) Other Claimed Deductions

Petitioner spent $1,062 on 1982 Schedule C business expenses for farming. Petitioner's Hall Farms business activity is not incorporated, thus these expenses are not corporate expenses.

Petitioner reported $7,538 gross receipts from this activity on his 1982 tax return. Supra table 3. We conclude from the foregoing that petitioner is entitled to deduct these $1,062 1982 farm expenses on Schedule F.

Petitioner spent $3,623 on 1982 travel and entertainment; he claimed travel and entertainment deductions of $8,922, $2,440, and $5,782 on his tax returns for 1983, 1985, and 1986, respectively.

Petitioner has failed to meet the substantiation requirements of section 274, even taking into account the provisions of section 1.274-5(c)(5), Income Tax Regs., and so no deduction is allowable for these expenditures. Sec. 274(d); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969).

Petitioner, whose listed Schedule C trade or business during each of the years in issue is "attorney", is entitled to deduct on Schedule C his Oklahoma Bar Association dues, the $1,644 he spent on law books in 1982, and his law practice office expenses. As to petitioner's overall office expenses, we are once again faced with an inadequate record. We have examined the incomplete records in evidence as to 1982. and 1983, and we are satisfied that petitioner spent at least $27,000 in 1982 and at least $8,000 in 1983 for law practice office expenses, that he is entitled to deduct on Schedule C. At trial, petitioner estimated that only about $10,000 of his $78,595 claimed 1984 Schedule C deductions related to his law practice. Doing the best we can, bearing heavily against petitioner, we conclude (and we have found) that

he is entitled to Schedule C deductions for law practice office expenses in the amounts of $27,000 for 1982, $8,000 for 1983, $5,000 for 1984, $3,000 for 1985, and $1,000 for 1986.

Petitioner made $150 charitable contributions in 1982. He deducted this amount on Schedule C. Petitioner has not shown that this was an expense of his trade or business, and so his deduction is allowable only as an itemized deduction on Schedule A, and not on Schedule C. See Marquis v. Commissioner, 49 T.C. 695 (1968).

As to all of petitioner's other claimed Schedule C deductions disallowed by respondent, petitioner has failed to carry his burden of proving his entitlement to deductions, whether on Schedule C, A, F, or E.

We hold in part for respondent and in part for petitioner on this issue.

## IV. Section 1401

Section 1401 provides that a tax-shall be imposed on the self-employment income of every individual.

Respondent contends that to the extent petitioner has self-employment income for 1983, 1985, and 1986, petitioner is liable for the self-employment tax imposed by section 1401. Petitioner disputes the imposition of all taxes determined by respondent in the notice of deficiency.

We agree with respondent.

Petitioner has the burden of proof on this matter. Rule 142(a); Welch v. Helvering, 290 U.S. at 115. Petitioner has failed

to carry this burden.

From the foregoing, we conclude that petitioner is liable for the self-employment tax imposed by section 1401 for 1983, 1985, and 1986 to the extent that petitioner has self-employment income, as determined by our holdings on the Schedule C income and deductions issues.

We hold for respondent on this issue.

### V. Additions to Tax

A. Section 6651(a)(1)

Section 6651(a)(1)[19] imposes an addition to tax of 5 percent per month (with a maximum of 25 percent) in case of failure to file a timely income tax return, unless it is shown that this failure is due to reasonable cause and not due to willful neglect. Petitioner has the burden of proving error in respondent's

---

[19]Sec. 6651(a)(1) provides, in pertinent part, as follows:

SEC.6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) Addition to the Tax.--In case of failure--

(1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

determinations that this addition to tax should be imposed against him. Funk v. Commissioner, 687 F.2d 264, 266 (8th Cir. 1982), affg. T.C. Memo. 1981-506; Ehrlich v. Commissioner, 31 T.C. 536, 540 (1958).

Petitioner filed his 1983 through 1986 tax returns late. See supra, note 2 and table 2. Petitioner has not shown that his failure to timely file these returns was due to reasonable cause.

Petitioner has failed to carry his burden of proof.

We hold for respondent on this issue.

B. Section 6653(a)

Section 6653(a)(1)[20] (sec. 6653(a)(1)(A), as to 1986)

---

[20]Sec. 6653(a), as in effect for 1983 through 1985, provides, in pertinent part, as follows:

SEC. 6653. FAILURE TO PAY TAX.

(a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income, Gift, or Windfall Profit Taxes.--

(1) In general.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

(2) Additional amount for portion attributable to negligence, etc.--There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601--

(continued...)

imposes an addition to tax of 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2)

---

[20](...continued)

　　　　(A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1),* * *

　　　　Sec. 6653(a), as in effect for 1986, provides in pertinent part, as follows:

　　　　SEC. 6653.　ADDITIONS TO TAX FOR NEGLIGENCE AND FRAUD.
(a) Negligence.---

　　　　(1) In general.--If any part of any underpayment (as, defined in subsection (c)) is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of--

　　　　　　(A) 5 percent of the underpayment, and

　　　　　　(B) an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).

　　　　The later amendment of this provision by sec. 1015(b)(2)(A) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3569, does not affect the instant case.

　　　　As a result of secs. 7721(a) and 7721(c)(1) of the omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2106, 2395, 2399, the revised negligence, etc., addition to tax now appears in subsecs. (b)(1) and (c) of sec. 6662, I.R.C. 1986.

(sec. 6653(a)(1)(B), as to 1986) imposes an additional addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to the negligence, etc. Petitioner has the burden of proving error in respondent's determination that these additions to tax should be imposed against him. Holman v. United States, 728 F.2d 462 465 (10th Cir. 1984); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Broadly speaking, for purposes of this provision, negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947-948 (1985).

Petitioner is a lawyer. He testified as follows:

> I have been a practicing attorney continuously since 1974 and am personally and professionally familiar with financial operations and reports, accounting practices and the Internal Revenue Code.

Nevertheless, he neglected to separate his activities from the activities of the Corporations. He did not keep his records in an organized manner. He still had his records when he filed his tax returns for the years in issue (they had not yet been transported to Juergens' sister's barn), and still he estimated many of the entries on the tax returns. He overlooked substantial amount of royalty and interest income for which Forms 1099 had been sent. The tax returns he filed for 1983 through 1986 showed lump sums for Schedule C expenses and various categories of

income, without any of the breakdowns required by the tax forms. See sec. 6011; see Emmons v. Commissioner, 92 T.C. 342, 348-351 (1989), affd. 898 F.2d 50 (5th Cir. 1990), as to the effect of the late filing of petitioner's tax returns.

Petitioner did not use due care to deal with his income tax obligations, and he failed to do what a reasonable and ordinarily prudent person would do under the circumstances.

On brief, respondent contends that for 1983 section 6653(a)(2) should be applied to the entire underpayment. Respondent in the notice of deficiency determined that $2,054 of the underpayment for 1983 was not due to negligence for purposes of the addition to tax under section 6653(a)(2). Our examination suggests that the $2,054 amount is attributable to (1) a change in filing status from head of household to single, and (2) self-employment taxes.

Respondent has not sought to amend the pleading to assert this increase formally. Ordinarily, this Court will not entertain an issue that has not been pleaded properly and,--absent a clear and timely claim by respondent for an increased deficiency, will not enter a decision in an amount greater than was determined in the notice of deficiency. Estate of Petschek v. Commissioner, 81 T.C. 260, 271-272 (1983), affd. 738 F.2d 67, 72 (2d Cir. 1984). Section 6214(a), however, grants this Court jurisdiction to determine a deficiency or addition to tax larger than that stated in the notice of deficiency, if respondent claims the increased

amount "at or before the hearing or rehearing."

In the instant case respondent has not specifically addressed the issue, and by the time of trial had not requested an increase in the additions to tax under section 6653(a)(2). In these circumstances we cannot conclude that respondent has asserted a claim for the increased amount as required by section 6214(a), nor that the issue has been tried by consent of the parties within the meaning of Rule 41(b)(1).

We conclude that so much of the underpayment for 1983 as is attributable to changes in filing status and the self-employment taxes is not subject to the addition to tax under section 6653(a)(2).

We hold for respondent on this issue, but limited as described in the notice of deficiency.

C. Section 6661(a)

Section 6661(a)[21] imposes an addition to tax of 25 percent of

---

[21]    SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY.

    (a) Addition to Tax.--If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement.

Although the years before us on this issue are 1983 through 1985, we apply the statute as amended in 1986, because sec. 8002
                                                    (continued...)

the amount of any underpayment attributable to a substantial understatement of tax. <u>Pallottini v. Commissioner</u>, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $5,000. Sec. 6661(b)(1)(A). (Our holdings make it clear that petitioner has substantial understatements for 1983, 1984, and 1985.)

If an item is not attributable to a tax shelter, then the understatement shall be reduced on account of the item, and the addition to tax accordingly reduced, if (1) the taxpayer's treatment of the item was based on substantial authority, or (2) the taxpayer adequately disclosed on the tax return or in a statement attached to the tax return the relevant facts affecting the item's tax treatment. Sec. 6661(b)(2)(B).

Respondent has authority to waive this addition to tax, if the taxpayer shows there was reasonable cause for the understatement and the taxpayer acted in good faith. Sec. 6661(c).

Petitioner has the burden of proving error in respondent's determination that such an addition to tax should be imposed against him. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. at 115.

---

[21](...continued)
of the Omnibus Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951, amended sec. 6661(a) to apply to additions assessed after the date of the enactment of this Act.

As a result of sec. 7721(c)(2) of OBRA 89, 100 Stat. 2399, the substance of former sec. 6661 now appears as subsecs. (b)(2) and (d) of sec. 6662.

Petitioner has not shown (1) that he had substantial authority for the position taken on his 1983, 1984, and 1985 tax returns, or (2) that he adequately disclosed his position in a statement attached to these tax returns or on these tax returns. Petitioner also has not shown that he had reasonable cause for the understatement, and that he acted in good faith.

Petitioner has failed to carry his burden of proof.

We hold for respondent on this issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.